## Delaware River Bridge Contracts.

*Contracts—Public construction contracts—Surety of contractors—Interest of member of Commission awarding contract — Soliciting agent of bonding company.*

1. A public construction contract, otherwise properly awarded, is not void because a member of the Commission authorized to award the contract is the soliciting agent of a surety company which became surety for the contractor.

2. The fact that the contractor stated in his proposal that no member of the Commission was interested directly or indirectly in the contract as "surety," did not render the contract void *ab initio*, inasmuch as it was not a material misstatement amounting to fraud.

3. In such case, as there was a capable and responsible contractor, with a qualified and responsible surety standing back of him, no danger could come to the Commission by a mere misstatement that no member of the Commission had an interest interest in the business connected with the contract.

4. Section 66 of the Act of March 31, 1860, P. L. 382, which makes it a misdemeanor for certain officials or officers and employees of corporations to be interested in public contracts, does not make contracts to which it is applicable void if they are otherwise legal.

5. A member of a Commission, with power to award public contracts, who has an individual interest in such a contract, should not participate in awarding it.

Department of Justice. Opinion to Delaware River Bridge Joint Commission.

WOODRUFF, Att'y-Gen., Feb. 16, 1924.—I duly received copy of your resolution, adopted Feb. 15, 1924, which reads as follows:

"The Delaware River Bridge Joint Commission, at a meeting Friday, February 15th, 1924, unanimously adopted the following resolution offered by Mr. Lewis and seconded by Mr. Smith:

" '*Whereas*, repeated statements have appeared in the Philadelphia newspapers to the effect that a member of this Commission is identified with a bonding agency which has solicited and supplied surety bonds for contractors to whom construction work has been awarded for the Delaware River Bridge by this Commission;

" '*And whereas*, by reason of this alleged connection the validity of these contracts has been brought into question;

" '*Therefore, be it resolved*, That, prior to the awarding of any new contracts, the facts in connection with these allegations be thoroughly investigated and that a legal opinion be promptly obtained as to the effect of such facts upon the validity of contracts let or to be let by this Commission.' "

There is one possible difficulty about giving an opinion on the validity of the contracts you indicate; namely, that you did not state the facts connected

4 D. & C.

with the award of such contracts upon which "the validity of these contracts has been brought into question." However, I feel so sure that you desire me to give a prompt answer to your request for a legal opinion that I will assume the responsibility at this moment (subject to correction if your investigation should develop different facts) to state the facts upon which this opinion will be based and to restate the question.

### Statement of facts.

Thomas B. Smith is a member of the Delaware River Bridge Joint Commission and also Chairman of the Executive Committee of that Commission. He is also a majority stockholder and director, but not an officer, in the Thomas B. Smith Company, which is an insurance agency acting (among other activities) as soliciting agent for National Surety Company in a district which includes Philadelphia.

National Surety Company is a corporation authorized and qualified to become surety, both in Pennsylvania and New Jersey, for any contractors who may enter into contracts with the Commission.

The Executive Committee acts intensively upon the question of contracts desired and questions concerning such contracts and the proposals and bids to be submitted by contractors; and it reports its digested findings to the Commission. The Commission awards contracts to the lowest responsible bidders. A bond up to 50 per cent. of the contract price is required.

Several contracts have already been awarded, with National Surety Company as bondsman, wherein Thomas B. Smith Company has secured the bonding business from the contractor for National Surety Company and received the same commission on said business thus secured as would have been received if Thomas B. Smith were not a member of the Commission and his agency had secured the same bonding business for National Surety Company.

Other contracts have been awarded with other corporate surety than National Surety Company.

None of the contracts thus far awarded have been given to any contractors except the lowest responsible bidders, and the question of the responsibility of the bidders has not been determined or affected because of the offer by the contractor of a bond from National Surety Company as compared with the offer of bonds from other qualified corporate sureties. The Commission feels sure that, in awarding further contracts, it can, and will, make sure to award such contracts only to the lowest responsible bidders, and that the offer of National Surety Company as surety will not influence the determination as to which bidder is the lowest responsible bidder. The officers of Thomas B. Smith Company, in active solicitation of business for National Surety Company, sent out at least three letters to possible bidders on contract work advertised by the Commission. In these letters the Thomas B. Smith Company offered its services for the procurement of bonds and stated that "our Thomas B. Smith" was also a member of the Commission. After at least three of these letters had gone out, Thomas B. Smith discovered what was being done and immediately forbade and stopped any further practice of that kind, and also strove to recall the letters already sent out. One of these letters, however, came to the attention of other interested bidders, insurance agencies, or bonding surety corporations, and, finally, to the attention of the newspapers, where the matter was taken up vigorously. Thereby the public was fully and widely informed of the above facts.

Thomas B. Smith admits in substance all the above facts. He denies that

any of these facts have influenced his action as Chairman of the Executive Committee and a member of the Commission. As a matter of fact, the Commission feels certain that the above facts have not influenced, and will not influence, the awarding of contracts pursuant to the law and good business practice to the lowest responsible bidder.

### Statement of the question.

1. Granting that the above statement of facts is true and substantially complete, are the contracts thus far awarded by the Delaware River Bridge Joint Commission with National Surety Company as surety valid unless and until they are canceled by due legal action for some good and sufficient reason, the bonding business having been solicited and secured from the contractor by Thomas B. Smith Company on behalf of National Surety Company with or without knowledge on the part of the contractor that Thomas B. Smith is a majority stockholder of Thomas B. Smith Company, and also a member of the Commission?

2. The same question with regard to contracts of the same kind awarded hereafter?

### Ethical and legal aspects.

In order that the following discussion and opinion may not be misunderstood, I draw attention to the fact that I have turned my back resolutely upon, and refrained from taking into consideration, the ethical side of this question, namely, as to whether a principal stockholder and director of an insurance agency which has directly to do with the soliciting of bonding business in connection with contracts should or should not be a member of the Commission. The ethical side of this question is one solely for the member of the Commission involved and the appointing power. The Attorney-General, in considering the validity of the contracts under the facts set forth above, must, and will, take into account nothing but the purely legal aspects of the case. The Pennsylvania Delaware River Bridge Act, approved July 9, 1919, P. L. 814, does not provide that none of the members of the Commission may have an interest, directly or indirectly, in contracts connected with the work of the Commission. The mutual law of the two states provides that all contracts over $2000 shall be advertised; and also that "no action of the said joint commission shall be valid and binding unless a majority of the Pennsylvania Commission and a majority of the New Jersey Commission shall vote in favor thereof." The Pennsylvania Commission consists of eight members, and, therefore, no contract can be awarded unless at least five members vote in favor of the award. It must be taken for granted that all members of the Commission vote for what, as far as they can see, is the best interest of the work involved, both from the standpoint of efficiency and economy. Thomas B. Smith's vote cannot possibly be more than one vote out of five, seven or eight, according to the number of members of the Commission voting on the award of any one contract. Although the act itself is silent concerning this matter, the form of proposal required by the Commission (and this proposal becomes part of the contract, if awarded) causes the contractor to certify the following as part of the inducement to the award of the contract:

"This Proposal is made without any connection with any other person making a proposal or bid for the same purpose, and is in all respects fair and without collusion or fraud. No member of the Joint Commission, or agent or employee thereof, is interested, directly or indirectly, as contracting party, partner, stockholder, surety or otherwise in the supplies, work or business to which it relates, or in any portion of the profits thereof."

4 D. & C.

This statement in the proposal becomes a material part of the contract, and if, in any substantial way or to any substantial extent, the statement is false, it would be ground for action by the other contracting party, namely, the Commission, as representing the Commonwealth, to cancel the contract.

Any such false statement in the proposal, however, would not in itself give the contractor or his surety the right to cancel the contract or the bond. If the contractor should fail, the bonding company could not, under the facts set forth above, try to evade responsibility under the bond.

In other words, the Commonwealth could take steps to cancel the contract if there were any misstatement in the proposal substantially affecting the interest of the Commonwealth, but the contractor and his bondsman could not take advantage of the contractor's own wrong to cancel the contract or the bond.

Let us first consider whether, under the facts set forth above, there was substantial misrepresentation or false statement in the portion of the proposal quoted directly above. The facts would not establish:

"1. Any connection with any other person making a proposal or bid for the same purpose.

"2. Any unfairness, collusion or fraud.

"3. That Thomas B. Smith (a member of the Joint Commission) was 'interested, directly or indirectly, as contracting party, partner, stockholder, surety . . . in the supplies, work or business to which it (the contract) relates, or in any portion of the profits thereof.' "

At first blush, it might be thought that Thomas B. Smith was interested as "surety," but there is no claim that he has any interest in National Surety Company itself, either as stockholder, director or officer. This leaves only one question under the statements in the above quoted part of the proposal, namely, was Thomas B. Smith "interested, directly or indirectly, . . . otherwise in the supplies, work or business to which it (the contract) relates, or in any portion of the profits thereof?" He was certainly not in any way interested in the supplies or work, as far as the facts disclose.

The business to which the proposal or bid relates did, however, involve indirectly an interest of the Thomas B. Smith agency, and, therefore, somewhat more indirectly of Thomas B. Smith himself, because the bond was part of the "business to which it (the contract) relates;" and although neither the agency nor Thomas B. Smith himself were *directly* interested in the bond, they were *indirectly* interested therein to the extent of a "portion of the profits thereof."

Hence, the statement in the proposal, it seems to me, failed of being true to the ultimate extent because of the fact that a member of the Commission had an indirect interest in a "portion of the profits" aimed at by the proposal or bid.

### Were the contracts void?

Did this misstatement make the contract void? Without going into the very voluminous law on this question, the answer is indubitably: "No, the contract was not void *ab initio* because of the indirect interest of Thomas B. Smith in the payments to the contractor, from which premiums would be paid to secure the bond of National Surety Company and commissions thereon to the insurance agency, and possible dividends therefrom to Thomas B. Smith."

### Are the contracts void?

The contracts already awarded are not void because of the misstatement, for the reason that contracts already entered into are enforceable at law, except for some really material fraud on the part of one of the parties. In

order that a misstatement may be material, it must have brought about a contract which in itself is contrary to public policy, or it must have worked to the substantial harm of the innocent party. The supply of labor and material toward the construction of the Delaware River Bridge is clearly a legal performance, and since the contractor is capable and responsible, with a qualified and responsible surety standing back of him, no danger can come to the Commission on account of a mere statement (even if untrue) that no member of the Commission has an indirect interest in the business covered by the contract. The performance of the contract is, after all, the substantial and material end and aim of the Commission.

### Are the contracts voidable?

Whether the contracts in question are voidable because of the alleged misstatement need not be considered at this time, unless the Commission should have in mind actual steps to rescind some one or more of the contracts; and I take it for granted that the Commission has no intention of voiding the contracts which it has considered with so much care and awarded.

Certainly the contractors were the lowest responsible bidders, or the contracts would not have been awarded to them. It is a matter of general knowledge in the business world that National Surety Company is a qualified and responsible surety. Since the contract was awarded to the lowest responsible bidder, there would be more danger of harm to the public interest from the rescinding of the contract than from requiring that it shall be fulfilled.

I am not overlooking the fact that section 66 of the Act of March 31, 1860, P. L. 382, makes it in general a misdemeanor for certain officers or employees of "any corporation, municipality or public institution" to be interested in any contract having to do with such corporation, municipality or public institution. This section falls short of covering the case in question. Even if it were applicable, the punishment provided for applies to the officer or employee and not to the contractor. In other words, this penal statute surely does not make contracts to which it is applicable void, and I do not believe that it even makes them voidable merely because of the interest of the officer or employee.

### Conclusion.

1. As to the first question, the contracts already awarded by the Delaware River Bridge Joint Commission to contractors whose bonds have been supplied by National Surety Company and solicited by Thomas B. Smith Company are, in my opinion, legally valid. The contractors should be paid as promptly as convenient, according to the terms and provisions of the contracts. The same auditing scrutiny should be given to requisitions for payments on these contracts, no more and no less, as is given to contracts secured by bonds supplied by other bonding companies than National Surety Company.

2. As to contracts not yet awarded, the Commission should consider the bids and proposals and the surety bonds offered, just as they have done heretofore, in order to determine which is the lowest responsible bidder for each contract, and whether the security offered is that of a qualified and responsible bonding company. When awards are made with reasonable care along these lines, the contracts will be valid, whether the bond is given by National Surety Company, with Thomas B. Smith Company acting as its soliciting agent, or not. If Thomas B. Smith Company is interested in the matter because of having solicited the bond to be supplied, it is a recognized principle amounting to a legal requirement that Thomas B. Smith, because of his indirect interest, should not take part in determining the award of the contract.

From C. P. Addams, Harrisburg, Pa.